# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| H&H DISPOSAL SERVICES, INC., | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 18-4467 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and UNITED STATES ARMY CORPS OF ENGINEERS, | : | |
| Defendants. | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                             **AUGUST 12, 2019**

Plaintiff H&H Disposal, Inc. ("H&H") brings this action against Defendants the United States Environmental Protection Agency (the "EPA") and the United States Army Corps of Engineers (collectively, "Defendants") seeking preliminary and permanent injunctions pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613 *et seq.*

Defendants move to dismiss the Amended Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). H&H filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss and Defendants filed a Reply Brief in Support. Additionally, at the request of the Court, both parties filed supplemental briefing.

For the reasons noted below, Defendants' Motion to Dismiss the Amended Complaint is granted.

**I.    BACKGROUND**[1]

H&H is a tenant holding a 99-year lease at the former site of the Clearview Landfill (the "Landfill") in Delaware County. (Am. Compl. ¶ 15.) The lease began in 2001, when H&H was founded, and the terms and payments were updated in 2014 and re-executed in February 2018. (*Id.*) H&H operates on approximately one acre of the total 39 acres encompassing the site. (*Id.* ¶ 18.) There are several buildings located on the leasehold, which are maintained by H&H. (*Id.* ¶¶ 22–23.)

H&H operates a waste hauling and removal business and currently has multiple trash hauling contracts, including contracts with six local townships, commercial buildings, and residential neighborhoods. (*Id.* ¶¶ 19, 25.) According to H&H, some of its contracts require it to be located in close proximity to the township or within the township itself. (*Id.* ¶ 26.) The nature of H&H's business also requires unique zoning. (*Id.* ¶ 28.)

In 2005, the EPA commenced a CERCLA action against the Landfill. (*Id.* ¶ 31.) This Court entered a default judgment in favor of the EPA, holding the Landfill liable for site contamination and remedial clean-up costs. (*Id.*) The EPA never served notice of the 2005 CERCLA action upon H&H. (*Id.* ¶ 32.)

The default judgment resulted in an order granting the EPA "immediate and unconditional access to and through all portions of the 39 Acres of Land" and permitted access "for such duration as is necessary to complete all activities necessary to conduct a Remedial Investigation and Feasibility Study, design, implement, operate, and maintain appropriate remedial actions at the Site." (*Id.* ¶ 35 (citing Ex. 2, Order Granting Motion for Default

---

[1] We take the facts alleged in the Amended Complaint as true, as we must when deciding a facial attack to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.*

Judgment ("2005 Order"), ¶¶ 2–3).) The 2005 Order enjoined the Landfill from interfering with access. (*Id.* ¶ 36.)

Defendants have conducted testing, drilled bore holes, moved piles of dirt from one location to another, and dumped more waste on the property from nearby locations. (*Id.* ¶ 40.) Although the 2005 Order was not directed at any tenants, specifically, H&H has cooperated with Defendants. (*Id.* ¶¶ 37, 39.) In 2014, the EPA published the result of their nine-year study in a Record of Decision ("ROD"). (*Id.* ¶ 40.) The ROD outlined the EPA's plan to clean up the Landfill. (*Id.* ¶ 41.) The ROD also stated that the site could be used in the future for industrial purposes. (*Id.* ¶ 42 (citing Ex. 3, Record of Decision ("ROD"), § 6.0).) Therefore, H&H was hopeful that it would be able to continue its operations at the site post remediation. (*Id.* ¶ 43.)

However, on April 18, 2018, H&H received a Notice to vacate from Defendants, citing their authority under the 2005 Order. (*Id.* ¶ 44.) H&H alleges that the letter gave it 90 days to vacate without any guarantee of payment of estimated just compensation. (*Id.* ¶ 45.) H&H alleges that, up until that time, Defendants had only spoken of the "potential" or possibility that H&H might have to vacate. (*Id.* ¶ 46.) H&H asked for, and received, an extension until September 30, 2018. (*Id.* ¶ 47.)

It was learned, sometime on or about August 15, 2018, that the clean-up effort would result in total non-use of the property for any future commercial or industrial use and that this was the reason for Defendants' demand to vacate. (*Id.* ¶ 48.) At that time, H&H also learned that Defendants could not spare any land on the 39-acre parcel where H&H could continue operating its business enterprise during the remediation process and that Defendants required the total and complete removal and relocation of all businesses situated on the 39-acre parcel. (*Id.* ¶ 49.)

According to H&H, it has attempted in good faith to relocate, looking into the possibility of renting or buying a new location. (*Id.* ¶ 50.) H&H has hired a commercial real estate broker to aid in this search and has considered approximately a dozen alternative property locations, if not more. (*Id.* ¶ 51.) H&H has encountered some difficulties. (*Id.* ¶ 53.) Its current lease payments are significantly below market value; therefore, it cannot afford to pay the new market rental rates until, and unless, Defendants pay just compensation and/or relocation benefits to compensate for this difference in rent payments going forward. (*Id.*) H&H asserts that its current rent is $2,050 per month, while fair market rent in the area is currently between $8,000–10,000 per month. (*Id.* ¶ 56.)

H&H alleges that Defendants believe that this Court's 2005 Order gives them the authority to relocate H&H and demolish the buildings located on the site. (*Id.* ¶ 58.) Counsel for H&H reminded Defendants, via several phone calls, of Defendants' obligation to comply with the 5th Amendment's "just compensation" requirement and other relevant statutes. (*Id.* ¶ 59.)

Defendants recently learned of new ownership of the Landfill, Killeen Disposal, LLC, and filed a motion to amend this Court's 2005 Order to add the new owner. (*Id.* ¶ 60.) Although not a party, H&H intended to file an answer asking this Court to narrow the scope of its order to only permit the removal of H&H according to the law. (*Id.* ¶ 61.) H&H believed it had 14 days to answer the Defendants' motion, but, before it was able to file, this Court granted Defendants' motion and signed their proposed order adding Killeen Disposal, LLC to the 2005 Order. (*Id.* ¶¶ 61–63.)

In their motion to amend, Defendants asserted that they will treat all personal property and structures remaining on the site as abandoned, including property owned by Killeen Disposal or "any other unidentified occupant." (*Id.* ¶ 68 (citing Ex. 4, 2018 Motion, ¶¶ 25–26).) H&H

still operates its business on the property pursuant to its 99-year lease and "does not consider its property abandoned simply because [D]efendants say it is abandoned." (*Id.* ¶¶ 65–66.) According to H&H, Defendants have not yet paid just compensation despite having thirteen years to complete condemnation proceedings. (*Id.* ¶ 67.) H&H further contends that if Defendants continue to threaten to tear down H&H's buildings, it would effectively put the company out of business. (*Id.* ¶ 68.)

H&H filed its Complaint and Motion for Temporary Restraining Order, Preliminary and Permanent Injunctions in this Court on October 18, 2018. H&H's request for a temporary restraining order was denied by the Honorable Paul S. Diamond on the same day. (Doc. No. 2.) H&H filed an Amended Complaint on January 25, 2019. Defendants filed this instant Motion on February 11, 2019.

## II. <u>LEGAL STANDARD</u>

### A. Lack of Subject Matter Jurisdiction

The standard applied in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) depends on whether the motion presents a facial or a factual attack on the allegations made in the complaint. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). In deciding a facial attack, district courts apply the same standard of review it would use in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). "[T]he court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

5

However, a factual attack "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). When deciding a factual attack, the court may "consider evidence outside the pleadings" and "no presumptive truthfulness attaches to [the] plaintiff's allegations . . . ." *Davis*, 824 F.3d at 346 (quoting *Mortensen*, 549 F.2d at 891)). The court must "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997) (quoting *Intern. Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982)). "Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen*, 549 F.2d at 891.

**B.  Failure to State a Claim**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant." *Davis*, 824 F.3d at 341 (quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)) (internal quotation marks omitted). However, courts need not "accept mere[] conclusory factual allegations or legal assertions." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (citing *Iqbal*, 556 U.S. at 678–79). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. Finally, we may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Davis*, 824 F.3d at 341 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)) (internal quotation marks omitted).

## III.  DISCUSSION

This case revolves around H&H's due process challenge to a CERCLA action on property identified by the EPA as a Superfund site. Defendants' Motion to Dismiss argues that H&H lacks standing to challenge Defendants' CERCLA action. (Defs.' Mem. Law in Supp. Mot. Dismiss 17.)

Specifically, Defendants assert that H&H's challenge is in violation of CERCLA Section 113(h).[2] (*Id.*) Section 113(h) divests federal courts of jurisdiction over challenges to the EPA's administration of the statute, such as claims that the EPA did not "select" the proper "removal or remedial action." *See Reardon v. United States*, 947 F.2d 1509, 1514 (1st Cir. 1991) (*en banc*). However, H&H contends that Section 113(h) does not preclude challenges to the constitutionality of the CERCLA statute itself, meaning challenges to the "statutory scheme" granting the government its authority. (Pl.'s Suppl. Br. 10–11 (citing *Reardon*, 947 F.2d at 1514–15).)

The central question in deciding Defendants' Motion to Dismiss is whether H&H makes a challenge to the EPA's "selection and implementation of response actions," *Clinton Cty. Comm'rs v. E.P.A.*, 116 F.3d 1018, 1023 (3d Cir. 1997) (*en banc*), or to "a statutory scheme" granting the government its authority, *Reardon*, 947 F.2d at 1514. As we discuss below, we find

---

[2] Codified as 42 U.S.C. § 9613.

7

that H&H's claim is a challenge to the EPA's administration of CERCLA and, therefore, is precluded by Section 113(h).

"CERCLA sets forth a comprehensive scheme for the cleanup of hazardous waste sites." *Broward Gardens Tenants Ass'n v. E.P.A.*, 311 F.3d 1066, 1071 (11th Cir. 2002). The act gives the EPA the authority to undertake response actions where there is a release or threatened release of hazardous substances. 42 U.S.C. § 9604. Response actions are either "removal actions," such as a study or cleanup of contamination, or "remedial actions," such as "those actions consistent with permanent remedy taken instead of or in addition to removal actions." *Broward Gardens*, 311 F.3d at 1071 (quoting 42 U.S.C. § 9601(23), (24)).

Congress later amended CERCLA to deny federal courts jurisdiction to hear challenges to both removal and remedial actions until those actions are complete. *See id.* Section 113(h) provides:

> No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any other issued under section 9606(a) of this title, in any action . . . .

42 U.S.C. § 9613(h).

Established caselaw has held that Congress intended Section 113(h) to be a "blunt withdrawal of federal jurisdiction" in order to further the "policy underlying CERCLA by allowing a quick response to serious hazards." *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 328–29 (9th Cir. 1995) (citing *North Shore Gas Co. v. E.P.A.*, 930 F.2d 1239, 1244 (7th Cir. 1991)). "CERCLA's general objective is to protect the public health and environment against improper disposal of hazardous waste. Section 113(h) furthers that objective by

preventing EPA remedial actions from being delayed by litigation." *Broward Gardens*, 311 F.3d at 1076; *see also Giovanni v. U.S. Dep't of the Navy*, 906 F.3d 94 (3d Cir. 2018) ("[CERCLA] gives 'the President broad power to command government agencies and private parties to clean up hazardous waste sites.'"); *Clinton Cty. Comm'rs*, 116 F.3d at 1023 (holding federal review is precluded where remedial action is "selected" but not yet "taken"); *Razore v. Tulalip Tribes of Washington*, 66 F.3d 236, 239 (9th Cir. 1995) (precluding challenges that would "dictate specific remedial actions and . . . alter the method and order for cleanup."); *Reardon*, 947 F.2d at 1513 (quoting *Voluntary Purchasing Grps., Inc. v. Reilly*, 889 F.2d 1380, 1390 (5th Cir. 1989)) ("[T]he crazy-quilt litigation that could result from allowing [potentially responsible parties] to file declaratory judgment actions prior to the initiation of government cost recovery actions could force the EPA to confront inconsistent results."); *Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1018–19 (3d Cir. 1991) ("The limits § 113(h) imposes on a district court's jurisdiction are an integral part of Congress' overall goal that CERCLA free the EPA to conduct forthwith clean-up related activities at a hazardous site.").

Relying on this preclusion, Defendants argue that H&H's claims are "'challenges' to EPA's Superfund activities and, therefore, are barred under CERCLA . . . ." (Defs.' Mem. Law in Supp. Mot. Dismiss 17.) However, H&H contends that it is making a constitutional challenge to the CERCLA statute itself. (Pl.'s Answer to Mot. Dismiss 24 ("This [C]ourt has jurisdiction because Plaintiff does not challenge the selected remedy but instead challenges the constitutionality of CERCLA under the 5th Amendment to the [U]nited [S]tates [C]onstitution.").) H&H asserts that because Defendants plan to demolish the buildings on the Landfill and permanently relocate H&H's business, they are conducting a physical taking of H&H's property. (*Id.* at 31.) H&H believes that the statutorily available remedies are

9

inadequate to provide "just compensation" and that it will suffer irreparable harm. (*Id.* at 31–32.)

H&H relies heavily on a case from the United States Court of Appeals for the First Circuit ("First Circuit"), *Reardon v. United States*. In *Reardon*, the First Circuit held that Section 113(h) did not remove judicial review of all constitutional challenges. *See Reardon*, 947 F.2d at 1514–15. There, the landowner-plaintiffs challenged a lien placed on their property by the EPA as an attempt to recoup the amount spent on the removal of hazardous substances. *See id.* at 1511. The First Circuit agreed with the district court that the filing of a lien was an "enforcement" activity and, therefore, the court lacked jurisdiction to hear the claim. *See id.* at 1512–13 ("Congress amended the scope of 'removal' and 'remedial' actions to include 'enforcement activities related thereto' primarily to ensure that EPA could 'recover costs for enforcement actions taken against responsible parties.'"). However, the First Circuit distinguished between the statutory challenge and plaintiffs' due process claim. *See id.* at 1514 (identifying "two types of constitutional challenges—challenges to EPA's administration of CERCLA, and challenges to CERCLA itself"). Ultimately, the Court found that "[b]ecause a due process challenge to the CERCLA lien provisions is not . . . a challenge to 'removal or remedial action selected [under CERLCA],' we do not find that the 'everyday meaning' of [Section 113(h)] divests the federal courts of jurisdiction to hear such a challenge."

H&H specifically cites two reasons provided by the *Reardon* Court to highlight the distinction between a constitutional challenge and a precluded challenge to EPA-selected remedial methods. First, the First Circuit notes that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Id.* at 1514 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). The Court reasoned that Section 113(h) did not establish a

"clear congressional intent to preclude the type of constitutional claim the [plaintiffs were] making—a challenge to several statutory provisions which form part of CERCLA." *Id.* at 1515. Accordingly, H&H highlights that it is alleging constitutional violations of the takings clause and due process clause of the 5th Amendment. (Pl.'s Answer to Mot. Dismiss 26–27.)

Second, the First Circuit found that Section 113(h) "divests federal courts of jurisdiction over challenges to EPA's *administration* of the statute—claims that EPA did not '*select*[]' the proper 'removal or remedial action,' in light of the standards and constraints established by the CERCLA statutes." *Id.* at 1514 (alteration in original) (quoting 42 U.S.C. § 9613(h)). However, in finding that the plaintiffs' claim was against the EPA-imposed property lien, the *Reardon* Court found that it did not "concern the merits of any particular removal or remedial action. Rather it [was] a challenge to the CERCLA statute itself." *Id.* H&H similarly claims that its challenge is merely a constitutional challenge "to a statutory scheme under which the government is authorized to take [H&H's] leasehold interest in violation of the Constitution and its own standards, regulations, conditions, requirements, and court order." (Pl.'s Answer to Mot. Dismiss 27.)

However, H&H's characterization of its claim is wrong and the flaw in its argument is laid bare by a review of a third rationale provided by the *Reardon* Court, which H&H failed to apply. Importantly, the First Circuit noted that a pre-enforcement review of the plaintiffs' due process claim regarding the CERCLA lien "does not require any information that is likely to be available until clean-up of a site is finished. Because it is a purely legal issue, its resolution . . . does not have the potential to force EPA to confront inconsistent results." *Reardon*, 947 F.2d at 1515 (finding pre-enforcement review of lien would not hamper EPA's collection efforts, unless found to be a due process violation). Essentially, the First Circuit found that "extending

11

jurisdiction . . . does not run counter to the purpose underlying [Section 113(h)]" because "a due process challenge to the CERCLA lien provisions is not . . . a challenge to 'removal or remedial action . . . .'" *Id.* Therefore, judicial review was proper because it would not delay the EPA's clean-up efforts. *Id.*

Moreover, this factor is central to several other courts' analysis of pre-enforcement CERCLA review. *See Broward Gardens*, 311 F.3d at 1076 ("Given the litigiousness of our society, the virtually limitless ability of lawyers to construct constitutional challenges, and the protracted nature of litigation, it is not absurd for Congress to have assigned a higher priority to the prompt cleanup of a hazardous waste site than to the immediate adjudication of a claim challenging the remedial action."); *Clinton Cty. Comm'rs*, 116 F.3d at 1024 ("Were we to . . . permit judicial review of EPA remedial actions before completion whenever a challenge includes *bona fide* allegations of irreparable harm to public health or the environment, we would undermine Congress's clearly expressed intent because we would create a situation in which response actions could be seriously delayed . . . ."); *see also Giovanni*, 906 F.3d at 104 (finding challenges to some laws may be "too attenuated from the cleanup itself to be considered a challenge to the remediation activities").

H&H not only specifically *asks* for the EPA action to be delayed, but part of it's proposed remedy, reimbursement of moving expenses and increased rental costs, would be impossible to discern until after the enforcement is complete, as there is no way to know how much money relocating the company would cost until it actually does so.[3] (Am. Compl.,

---

[3] H&H also appears to ask that the remedial action be prevented from occurring altogether. It warns that "[D]efendants' actions to tear down [H&H's] buildings in the name of protecting the environment could result in further environmental contamination caused by the accumulation of trash bags on curbsides within the local community . . . [which] would be a breeding ground for disease . . . ." (Am. Compl. ¶¶ 114–15.) This is clearly a direct challenge to the chosen CERCLA remedy and is not something we will entertain. "CERCLA grants the President of the United States broad authority to provide for the cleanup of sites contaminated by hazardous

Wherefore ¶ 1 ("[P]laintiff respectfully requests . . . [t]hat a preliminary injunction issue enjoining defendants . . . from dislocating plaintiff . . . and further restraining defendants from damaging plaintiff's personal property or real property . . . ."); ¶ 3 ("That defendants be enjoined from displacing plaintiff without first paying plaintiff just compensation, which shall include the bonus value of its lease and the cost of relocating its business to a comparable location . . . .").) Unlike in *Reardon*, H&H's challenge is not "a purely legal issue." *See Reardon*, 947 F.2d at 1515. In fact, deciding a resolution of this pre-enforcement challenge would almost certainly force the EPA to "confront inconsistent results" in this particular action alone, as every other tenant located on the Landfill has since relocated. (Defs.' Reply in Supp. 3 n.1.) Allowing judicial review of H&H's alleged due process claim would be in direct conflict with Congress' stated goals of CERCLA.

Importantly, Congress "concluded that delays caused by citizen suit challenges posed a greater risk to the public welfare than the risk of EPA error in the selection of methods of remediation." *Clinton Cty. Comm'rs*, 116 F.3d at 1025. As the United States Court of Appeals for the Third Circuit has previously found, "EPA removal and remedial actions are designed to deal with situations involving grave and immediate danger to the public welfare." *Id.* Simply because H&H frames its challenge as a constitutional claim, it does not automatically evade preclusion. *Id.* (finding no jurisdiction despite plaintiffs *bona fide* allegations of irreparable harm). Congress clearly expressed intent to prevent serious delays "while EPA refutes

---

substances. Most of this authority has been delegated to [the] EPA." *Atlantic Richfield Co. v. Blosenski*, 847 F. Supp. 1261 (E.D. Pa. 1994) (citing *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 259–60 (3d Cir. 1992)). "When statutory language is as clear as it is here, 'it is simply not [the] function [of] a reviewing court to act as a super-legislature and second-guess the policy choices that Congress made.'" *Clinton Cty. Comm'rs*, 116 F.3d at 1025 (quoting *United States v. Princeton Gamma-Tech*, 31 F.3d 138, 153 (3d Cir. 1994)).

13

allegations of irreparable harm which, while '*bona fide*,' may simply reflect a legitimate difference of opinion about the preferred remedy for a particular site." *Id.*

For these reasons, we find that H&H's challenge to delay Defendants' CERCLA action is precluded under Section 113(h). After a nearly decade-long environmental study and public comment period, Defendants decided that the necessary remedy includes "the permanent relocation of all onsite businesses and the demolition of all structures." (Defs.' Mem. Law in Supp. Mot. Dismiss 9.) H&H cannot now come at the last minute to challenge the chosen remedy and request the remedial action be delayed under the guise of a constitutional claim.[4] Therefore, we lack subject matter jurisdiction to hear this case pursuant to Section 113(h).[5] H&H's Amended Complaint is dismissed with prejudice.[6]

---

[4] To the extent H&H's constitutional claim rests on Defendants alleged failure to serve notice of the 2005 CERCLA action and the subsequent amendment of the 2005 Order, it fails. (Pl.'s Answer to Mot. Dismiss 10–14.) "Congress made the policy choice to substitute elaborate *pre-remediation* public review and comment procedures . . . for judicial review." *Clinton Cty. Comm'rs*, 116 F.3d at 1025. Nowhere does H&H assert that Defendants refused to hold a public comment period or seek input from the community. In fact, H&H admits that throughout the entire process, the EPA was open about the potential for removal. (Am. Compl. ¶ 46 ("Up until [receiving the eviction notice,] [D]efendants had only spoken of the 'potential' or possibility that [H&H] might have to vacate."); *see also* ROD § 6 ("[T]he proximity of Zone 1 to recreational and residential areas increases the potential likelihood for non-industrial uses of Zone 1.").) Despite this knowledge, H&H continued to take advantage of exceedingly generous lease terms and cannot now act surprised that Defendants intend to enforce their chosen CERCLA remedy.

[5] As we find that we do not have subject matter jurisdiction, we do not address Defendants' Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of 12(b)(6).

[6] Opportunity to amend a complaint should be freely permitted; however, district courts may appropriately consider whether such amendments would cause undue delay, undue prejudice to the opposing party, or be futile. *See Averbach v. Rival Mfg. Co.*, 879 F.2d 1196, 1203 (3d Cir. 1989). Here, allowing H&H to amend would cause all three, as this Court is precluded from adjudicating this matter until after the CERCLA action has been taken. *See Clinton Cty. Comm'rs*, 116 F.3d at 1023.

## IV. CONCLUSION

Defendants' Motion to Dismiss the Amended Complaint is granted on the grounds that this Court lacks subject matter jurisdiction pursuant to Section 113(h). H&H's request for a preliminary injunction enjoining Defendants' CERCLA action is denied and its pre-enforcement due process challenge is dismissed with prejudice.

An appropriate Order follows.